UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                        ORDER

JOSE RUBERT,                                  No. 18-CR-776-5 (CS)

                Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Jose Rubert's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (ECF Nos. 196-98, 201), and the Government's opposition thereto, (ECF No. 200.)

      On January 17, 2020, Defendant was sentenced principally to 78 months' imprisonment, to be served consecutively to Defendant's previously imposed Sullivan County sentence of two to six years. (ECF No. 143.) That sentence was below the advisory Sentencing Guidelines range of 87-108 months. He argues that his sentence should be reduced based on his need for outside medical treatment, his need to care for family members, the risk presented and prison conditions caused by COVID-19, his self-improvement while incarcerated and the possibility that Congress will eliminate the crack/cocaine disparity.

      In his motion, Defendant noted that, according to the Bureau of Prisons ("BOP") website, he was slated to complete his federal sentence on May 9, 2023. (ECF No. 197 at 7.)[1] He also noted that he had completed his state sentence on January 17, 2020. (*Id.* at 5.) On June 27, 2022, I issued an order asking the parties to address "how it can be that Mr. Rubert is set to be released from federal custody on May 9, 2023, when he apparently (according to him) did not

---

[1] As of today, the BOP lists Defendant's release date as December 3, 2022.

finish his state sentence until January 17, 2020, and his federal sentence is 78 months to run consecutively to the state sentence." (ECF No. 202.)  After several extensions of time to gather documents, (ECF Nos. 204, 206, 208), the parties made submissions, (ECF Nos. 209-210), the bottom line of which is that BOP has given Defendant credit for the entire period from his arrest in this case on October 26, 2018 to the present, and the New York State Department of Corrections and Community Supervision ("DOCCS") has not taken a definitive position on whether Defendant has served any of his state time.  As of now, DOCCS records show Defendant as not having served any of his state sentence, but DOCCS has not lodged a detainer.  Defendant argues that while he was initially bailed on his state case, the state judge ordered his remand on November 30, 2018 (even though he had already been arrested and detained federally), and that he should get credit toward his state sentence starting then, meaning he has already completed his state sentence.  Should DOCCS agree, that creates a problem, because under 18 U.S.C. § 3585, "a defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence." *United States v. Labeille-Soto*, 163 F.3d 93, 99 (2d Cir. 1998); *see Sarro v. Billingsley*, No. 11-CV- 9395, 2013 WL 120817, at *4 (S.D.N.Y. Jan. 10, 2013) (BOP not authorized to "giv[e] credit on a federal sentence for any prison time that has already been credited to another sentence, whether state or federal.").  That means that if the state gives Defendant credit for the time after his bail was revoked, the federal government should not.

Because of the unique posture of this case, there is uncertainty as to what is next for Defendant.  If Defendant is correct and the state gives him credit, he will have received a windfall of two to six years, because I directed that the federal sentence run consecutive to the already imposed state sentence, but the two will have been served concurrently.  If the state does

not give Defendant credit, and he goes into state custody after serving his federal time, a reduction in his federal sentence will do little to address the issues on which he bases his motion. Given the uncertainty, I can assume either that: 1) Defendant will not get state credit, will not get a windfall, and will be sent to state custody upon release; or 2) he will get state credit, he will get a windfall, and he will be released to the community upon concluding his federal sentence. I will assume the former, because if I assume the latter, Defendant will have already effectively received a reduction of at least two years, and any further reduction would not be justified in light of the factors set forth in 18 U.S.C. § 3553(a), as further discussed below.

Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the § 3553(a) factors, reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community. Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above. But "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The defendant bears the burden of showing that the circumstances warrant a sentence

3

reduction." *United States v. Jacques*, No. 20-3276, 2022 WL 894695, at *1 (2d Cir. Mar. 28, 2022) (summary order).

Defendant argues that his medical condition – serious shoulder and neck pain – has not been adequately treated in BOP and that he should be released to obtain "corrective surgery to address the severe pain he lives through every day." (ECF No. 197 at 9.) His description of his condition as "daily torture," (*id.* at 11), seems like an overstatement compared to the description of his condition reflected in his medical records,[2] but I assume that he suffers from significant pain. His argument that he requires surgery, however, is unsupported. According to the medical records, on May 31, 2022 it was explained to Defendant that the outside neurologist from West Virginia University that he saw on October 25, 2021 had concluded, "No surgical pathology noted. Conservative treatment only recommended."[3] Other than surgery, Defendant does not suggest what treatment might ameliorate his condition that has not been provided.[4] Prescription pain medication is obviously a bad idea for Defendant, given his history of addiction. Indeed, he blamed opiates prescribed after an injury for reigniting his addiction and causing his return to

---

[2] Defendant submitted medical records through October 13, 2021, and the Government submitted them through May 31, 2022. Both sets of records will be filed under seal. (Both parties shall submit a hard copy to chambers for that purpose.) The Court is not clear as to why Defendant, in a motion filed June 2, 2022, only provided records through October 13, 2021. Defendant was seen by medical professionals, in and outside of the prison, thirteen times between then and May 31, 2022.

[3] Defendant in his reply disingenuously quotes only the "No surgical pathology noted" portion of this assessment and dismisses it as "simply not[ing] that he has not had surgery." (ECF No. 201 at 4.) Fairly read, the assessment clearly is that only conservative treatment, not surgery, was recommended.

[4] The medical records reflect that Defendant has been given over-the-counter pain medication, steroids and physical therapy, and the most recent medical record (May 31, 2022) reflects an increase in his medications.

drug dealing. (*See* ECF No. 125 at 5; ECF No. 197 at 4.) I do not doubt this he is suffering, but unfortunately there does not appear to be much, if anything, that can realistically be done about it. There is no reason to believe that reducing his federal sentence and sending him off to state prison will help.[5] His condition may be extraordinary but it is not compelling as a justification for a sentence reduction.[6]

Defendant also argues that his asthma puts him at increased risk for a severe case should he be infected with COVID-19. Only moderate-to-severe asthma appears on the list of conditions that the Centers for Disease Control ("CDC") has identified as causing increased risk for severe disease if one contracts COVID-19, and there is no indication that Defendant's condition rises to that level. Moreover, Defendant sensibly has been vaccinated against COVID-19.[7] *See United States v. Jones*, No. 17-CR-214, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) ("[T]he risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons

---

[5] I have presumed for purposes of this motion that Defendant will go from federal custody to state custody. It is worth noting, however, that Defendant represents that BOP intends to release him to a halfway house as part of the Residential Drug Abuse Program ("RDAP") in August 2022. (ECF No. 210 at 2.) Thus, unless the state quickly makes a determination, concludes that the state sentence is unserved, and issues a detainer – which I presume would nix the proposed halfway-house release – Defendant will imminently be in new surroundings. Neither party has addressed what effect that may have on his health care.

[6] That said, the May 31, 2022 notes reflect that the outside consulting doctor who saw Defendant on October 25, 2021 stated that Defendant was to receive follow-up in the neurosurgery clinic as needed. There is no indication that a doctor has determined that such a follow-up is needed, but the Government is directed to advise BOP that a doctor should evaluate whether such a follow-up would be of help to Defendant.

[7] The Government stated that it "understands from BOP that Rubert has refused the COVID-19 vaccine." (ECF No. 200 at 3.) But the medical records supplied by the Government reflect, on a page dated March 24, 2022, that he has received the Pfizer vaccine.

after he has been vaccinated.") (collecting cases).  Further, fortunately, there are currently only two inmate COVID cases (out of over 1600 inmates) at Defendant's facility, according to the BOP website.

Defendant also argues that he is needed to care for his elderly mother, and that the burden has fallen on his sister Fanny, who needs help.  Being unavailable to assist family members is one of "the sad and inevitable consequences of incarceration." *United States v. John*, No. 15-CR-208, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020).  Hardship on the family almost always results from serious criminal conduct, and while "it is truly unfortunate that [Defendant]'s incarceration has placed that burden on his [family] . . . that does not constitute an extraordinary and compelling reason to shorten his otherwise justly deserved sentence." *Id.*; *see United States v. Vailes*, No. 16-CR-297, 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020) ("There is no question that a defendant's incarceration is painful and burdensome to family members, who must bear the stress of managing their lives without the defendant's help.  It is an unfortunate fact, however, that these burdens are common to almost all families of incarcerated people, and do not constitute extraordinary or compelling factors.").  Moreover, in addition to Fanny, Defendant has a grown son and a sister Iris, and other relatives and friends who have written letters of support for him, so he is hardly the only option to assist Fanny and his mother.  Further, a sentence reduction will not render Defendant any more available to his family, as he will go to state prison.

That Defendant has participated in programs is not exceptional or even unusual.  Even if it were, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C.A. § 994(t).  While I may consider rehabilitation in combination

with other factors in determining whether there are extraordinary and compelling reasons for a sentence reduction, *see United States v. Torres*, 464 F. Supp. 3d 651, 661 (S.D.N.Y. 2020); *see also Brooker*, 976 F.3d at 237-38 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'") (quoting 28 U.S.C. § 994(t)) (emphasis in *Brooker*), I do not find that the combination of circumstances here rises to that level. Likewise, maintaining good conduct in prison is not uncommon, and indeed is expected. *See United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020).

Nor do the conditions implemented during the pandemic elevate Defendant's situation to the required level. I do not mean to minimize the difficulty that the pandemic has caused for inmates (or those on the outside, for that matter), but those universal conditions do not give rise to extraordinary and compelling circumstances. *See United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 331 (S.D.N.Y. 2020). Likewise, the inconveniences caused by lockdowns based on other factors are hardly extraordinary.[8]

Finally, Defendant notes that the EQUAL Act pending before the Senate would, if enacted, eliminate the crack/cocaine disparity. He argues that the disparity is unjustified and that if the EQUAL Act had been in effect at the time of his sentence, his Sentencing Guidelines range would have been lower. I assume that I can consider that statute and that disparity as part of a § 3582(c)(1)(A) motion. *See, e.g., United States v. Clark*, No. 12-CR-104, 2021 WL 201253, at *7

---

[8]To the extent Defendant suggests that lockdowns have interfered with his physical therapy, (*see* ECF No. 23), that argument is rejected. The medical records show that Defendant chose on May 12, 2022 to discontinue physical therapy. To the extent the lockdowns have slowed his completion of the RDAP, that is unfortunate, but not extraordinary or compelling.

(D. Conn. Jan. 20, 2021).  But it is not extraordinary and compelling in this case.  Not only is the EQUAL Act not the law at this time, but I already considered the crack/cocaine disparity in imposing the original sentence.  (ECF No. 178 at 16.)[9]  I do not regard a below-Guidelines 78-month sentence for a defendant with Defendant's history (discussed below) who dealt hundreds of grams of crack and hundreds of grams of powder cocaine as "unusually" or "overly" long.  *See United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020).  Further, Defendant has already received the benefit of a disposition that allowed him to avoid the ten-year mandatory minimum that would have otherwise applied (although I acknowledge that that minimum was itself a product of the disparity).  Finally, it is hard to regard Defendant's situation as extraordinary when he is one of thousands of inmates whose sentences would be lower if the EQUAL Act were the law at the time of sentencing, and his sentence is not extraordinarily harsh.

Accordingly, I conclude that the reasons advanced by Defendant do not, individually or collectively, amount to extraordinary and compelling circumstances.

Even if they did, I would still have to consider the § 3553(a) factors.  They militate against reduction of Defendant's already-below-Guidelines sentence.  Defendant was responsible for putting large quantities of dangerous drugs – approximately 310 grams of crack and 500 grams of cocaine – into circulation.  He did so while on bail for a serious state offense, which involved an assault with a trowel, after which Defendant: 1) led the police on a high-speed chase, endangering multiple vehicles (including a school bus and a car that landed in a ditch after evading Defendant); 2) drove into a hospital parking lot and onto the sidewalk, scattering

---

[9]Because Defendant dealt crack and powder cocaine, the disparity only affected a portion of his sentence.

pedestrians and then hitting two parked cars and two police vehicles; and 3) then refused to show his hands or get out of his car, telling the police they would have to kill him.  The instant conviction was his tenth.  Four of his priors were felonies; four involved drugs; two were robberies, one of which was particularly vicious; three were committed while on bail or parole; and seven were not counted toward his criminal history.  Early release of such an individual would undermine several of the purposes of sentencing.  It would not sufficiently promote respect for the law – an important factor in this case given Defendant's lengthy criminal history.  It would introduce unwarranted sentencing disparities, and would dilute the deterrent effect of the sentence.  It would not account for the need to protect the public from further crimes – unfortunately a likelihood given Defendant's track record of criminality well into adulthood, his recent violence, and his return to drug dealing after the relapsing into addiction after being prescribed pain medication.  In short, if there were  extraordinary and compelling circumstances, the § 3553(a) factors would outweigh them.

For the reasons stated above, the motion is denied.  The Clerk of Court is respectfully directed to terminate ECF No. 196.

Dated: July 29, 2022
       White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.